## NEW YORK OYER AND TERMINER.

DECEMBER, 1849.

Before EDMONDS, Justice, and two aldermen.

---

### THE PEOPLE v. ROBERT LONG.

The offense of attempting to commit arson depends on the purpose for which the fire was kindled.

Though the kindling of the fire might possibly, or even probably, burn the building, that would not be arson, unless there was a purpose thereby to set fire to or burn it.

If the kindling the fire would, as an inevitable result, have burned the building, an intention to do so may be presumed.

On an indictment for arson in the first degree, there may be a conviction for attempting to commit arson in any of the lesser degrees.

THE prisoner was indicted for an attempt to set fire to the Astor Place opera house.

On the evening of the Macready riot the prisoner was arrested in the crowd, by the police, and in company with others was handcuffed and taken into the building, and confined with six or eight others in a small room, which was used by the police, temporarily, as a lock-up for the persons arrested on that occasion.

When the prisoner was taken into that room he was greatly

17—vol. 2

excited, and demanded that the handcuffs should be taken off, and threatened that if they were not, he would take the life of the policeman, set fire to the building, etc.

His threats were disregarded, and he was confined in that room with the manacles on him.

The room contained shavings, rubbish, and other combustible matter, which the prisoner gathered together, and set fire to.

At that time, which was about eight o'clock in the evening, there were several other persons in the same room with him, and there was a gas light burning in it. Policemen were guarding the door to that room; there were many hundred persons in the building, which was lighted up, and theatrical performances going on; there was a strong force of police in the building, and a riotous crowd of several thousand gathered outside in the street, near the building, and attempting to break into it.

*The Judge* charged the jury that the offense imputed to the prisoner was an attempt to commit arson in the second degree.

To make out the offense the jury must be convinced that an attempt was made, but not consummated, to set fire to **or** burn the opera house in the night-time.

There was no doubt that the prisoner did gather together the combustible material and set fire to it, and that his doing so might, under some circumstances, have set fire to or burned the building; but the question for them was whether that was an attempt to set fire to or burn the building, or was an attempt, merely, to escape from his imprisonment, or obtain his release from his manacles?

Every kindling of combustible matter in a building was not arson, though it might possibly, or even probably, set fire to and burn it. To constitute arson there must be a design to burn the building. It was, therefore, a necessary inquiry, for what purpose was the combustible matter set fire to? If to warm himself, if to cook victuals, or if to escape from con-

The People v. Long.

finement, it did not follow that the purpose was to burn the building, though it might so result.

Intention was the very soul of crime under the law—its essence, its *sine qua non*—and unless the jury could say, in this case, that there was a purpose to set fire to and burn the opera house, the prisoner could not be convicted. .

It was true such an intent might be inferred from the act itself, if the inevitable consequence of the act would have been the burning of the building, or if the particular purpose could not have been effected without such burning, for every man is to be held responsible for the necessary and natural consequences of his acts, and be held to intend to produce such consequences.

If, therefore, the jury believed that the prisoner's purpose was merely to release himself from imprisonment, and that the means he resorted to would necessarily and naturally set fire to or burn the building, they would convict him; otherwise they would acquit.

The prisoner was convicted of an attempt to commit arson in the third degree.

[At the General Term of the Supreme Court, held in May, 1850, before EDMONDS, presiding justice, and EDWARDS, and MITCHELL, justices, this case was brought up from the Oyer and Terminer on a bill of exceptions. After argument and deliberation, the court held that on an indictment for arson in the first degree, there may be a conviction for an attempt to commit arson in any of the lesser degrees.]